IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 12-cv-01548-RPM

JAYNE POORBAUGH,

    Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHAFFEE, COLORADO

    Defendant.
_____

**MEMORANDUM OPINION AND ORDER**
_____

    Plaintiff Jayne Poorbaugh asserts five claims for relief against the Chaffee County Board of County Commissioners ("Chaffee County"), arising out of her employment with the County's Public Health Department: disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; retaliation under the ADA; hostile work environment under the ADA; interference under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and retaliation under the FMLA. Defendant has moved for summary judgment of dismissal of all of these claims.

    From the filed briefs, with exhibits, and oral argument, the Court finds that there is no dispute as to the following statement of facts.

    Ms. Poorbaugh was diagnosed with exercise induced asthma when she lived in Alaska in 1999. During the following years she experienced seasonal allergic symptoms and

occasional mild asthma breathing difficulty during exercise with good control using an inhaler.

In August, 2007, the plaintiff was hired as a public health nurse by Chaffee County, working out of an office located in a strip mall in Salida, Colorado. Susan Ellis became the Director of Chaffee County Public Health, supervising Ms. Poorbaugh and the other members of the small staff, in October, 2008. Pursuant to the recommendation of Ms. Ellis, the plaintiff was promoted to Clinical Coordinator in 2009, adding administrative duties to her work as a public health nurse.

As Clinical Coordinator/Public Health Nurse, she conducted home visits with patients and immunization clinic visits, attended staff meetings and client meetings, conducted disease investigations, coordinated clinic staffing, oversaw the nursing staff, and worked with the Public Health office manager, Holly Zoni.

In March 2010, the Chaffee County Public Health Department moved into the renovated Touber Building in Salida. Initially, Poorbaugh's office was located across the hall from the department's office space.

In mid-May 2010, when Ms. Poorbaugh moved into the Public Health Office she began to experience shortness of breath, requiring repeated use of an inhaler. Those symptoms persisted while she worked in the Public Health Office between May 19, 2010 and August 30, 2010. Her physician, Dr. Mark Shiffman, prescribed a high-dose steroid inhaler and Prednisone. He advised her to stay out of the Touber building.

After attending a meeting in the Public Health Office on August 30, 2010, Ms. Poorbaugh suffered a severe asthma attack. The next day, she informed Susan Ellis about

that asthma attack.  Chaffee County placed the plaintiff on paid administrative leave from September 1, 2010 to September 8, 2010 to enable her recovery.

Dr. Shiffman sent a letter to Ms. Ellis, dated September 6, 2010, summarizing Ms. Poorbaugh's medical condition and recommending that accommodations be made for Ms. Poorbaugh to work outside of the Touber Building. . . . "as close to 100% of the work week as possible."  Ex. J.  (restricted).

From September 9, 2010 to October 3, 2010 the plaintiff went on a scheduled vacation trip to China.  While Ms. Poorbaugh was on vacation, the County performed extensive cleaning in the Touber Building and installed antimicrobial air filters in the Public Health Office.

The County inquired about three alternative office spaces away from the Touber Building, but ultimately each space was deemed unsuitable; one space was in a moldy, dank and cold basement of a local courthouse, and the other two were used for County meetings and therefore lacked privacy.

Ms. Poorbaugh suggested that she park her small travel trailer next to the building and work from it.  The County declined that offer out of concern for potential liability issues.

There are genuine factual disputes concerning the plaintiff's requests for accommodating her impairments and the County's responses.  An air quality investigation of relevant parts of the Touber Building was conducted on December 8, 2010.  The results did not identify any health hazards or any identifiable cause for the asthma symptoms Ms. Poorbaugh experienced.

The plaintiff's job performance became an issue in the fall of 2010. Before that time, Susan Ellis thought Ms. Poorbaugh was a good nurse and worker who served Chaffee County families well. Ms. Ellis described Ms. Poorbaugh as an "exceptional employee" in her September 2008 – December 2009 performance evaluation. That opinion changed when the plaintiff sought accommodations that would enable her to stay out of the office. There are factual disputes about the manner in which Ms. Ellis treated the plaintiff.

According to Ms. Poorbaugh, during an October 4, 2010 meeting Ms. Ellis screamed at her, and repeatedly called her a liar in front of coworkers. Ms. Ellis denies harassing or screaming at the plaintiff.

Ms. Poorbaugh contends that Ms. Ellis yelled at her in front of County employee Zach Zeiset in November 2010. Ms. Ellis allegedly said that she did not believe Ms. Poorbaugh worked 32 hours that week, and threatened to withhold Ms. Poorbaugh's paycheck. Ms. Ellis denies that this incident occurred.

On November 15, 2010, Ms. Poorbaugh told Bob Christiansen, the Chaffee County Administrator, and Dan Short, Chaffee County Human Resources Director, that she felt her supervisor was harassing her.

According to Ms. Poorbaugh, she informed Ms. Ellis on November 19, 2010 that she (Poorbaugh) would not be able to work in the Public Health Department office the following Monday, November 22, because she was having difficulty breathing. Ms. Poorbaugh claims that Susan Ellis responded by saying she did not believe there was anything wrong with Ms. Poorbaugh. The County denies that Ms. Poorbaugh informed Ms. Ellis about a planned absence, and disputes that Ms.Ellis accused the plaintiff of malingering.

4

These factual disputes must be considered favorably to the plaintiff's testimony on summary judgment.

Ms. Poorbaugh did not come into the office on November 22. The next day, Ms. Ellis disciplined Ms. Poorbaugh for absenteeism. On November 24, the plaintiff was placed on a performance improvement plan.

On December 3, 2010, Ms. Poorbaugh provided Chaffee County a letter documenting her concerns about the County's failure to accommodate her, and about how Ms. Ellis was treating her. The plaintiff again requested a reasonable accommodation for her asthma but gave no specific requests.

On December 15, 2010, Ms. Poorbaugh took FMLA leave because of her asthma symptoms and a sinus infection. When the FMLA leave expired on March 10, 2011, the County placed her on paid administrative leave until March 14, 2011. That day, Chaffee County asked Ms. Poorbaugh and her then-attorney to provide medical details concerning the particulates that triggered her asthma to determine "whether the [antimicrobial] filter change and having her use the old office (where she did not experience difficulties) [was] a reasonable accommodation." There was no response because on March 16, 2011, Ms. Poorbaugh tendered a letter of resignation, saying she was resigning because of Ms. Ellis' harassment and the County's failure to even acknowledge it. In this civil action, the plaintiff claims that she also resigned because she feared that working in the Public Health Office would be detrimental to her health.

To sustain her ADA discrimination claim, the plaintiff must first establish that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified; that is, with or without reasonable accommodation (which she must describe), she is able to perform the

5

essential functions of the job; and (3) that Chaffee County terminated her employment because of her disability. *White v. York Int'l Corp.*, 45 F.3d 357, 360-361 (10th Cir. 1995) (internal citations omitted).

The defendant does not dispute that Plaintiff's asthma is a physical impairment that substantially limits one or more of her major life activities. Ms. Poorbaugh is a "disabled person" under the ADA.

The County contends that the plaintiff is not a "qualified individual" under the ADA because she could not perform the essential functions of her job, requiring her to be in the Public Health Office. Essential functions are "the *fundamental job duties* of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1) (emphasis added).

As a Public Health Nurse/Clinical Coordinator, Ms. Poorbaugh "[assisted] in managing a variety of nursing and administrative activities," including supervising staffing of clinics, coordinating public health services, working with the Public Health office manager, and overseeing the nursing staff. [Doc. 24, Ex. E]. She also "[provided] supervision of personnel when the Director [was] absent." [*Id.*]

Ms. Poorbaugh emphasizes functions in her job description that, in her view, could have been performed outside of the Touber Building, such as home visits with patients and attending staff meetings held in public places. However, those functions are not *fundamental* to Ms. Poorbaugh's position; rather, the undisputed evidence shows that her supervisory and managerial functions were essential functions that required her physical presence in the Touber Building. Ms. Poorbaugh points out that she worked across the hall from the Public Health Office in the Touber Building for two-and-a-half months without performance issues,

which suggests that her physical presence was not required. But working in an office across the hall from the center of the action is substantially different from not working in the building at all and that is what she requested. Thus, although there is a factual dispute, the employer is entitled to define the essential function of the job so long as it is an objective determination free from any discriminatory intention. That is this case.

Accordingly, the Court must determine whether any reasonable accommodation by the County would have enabled Ms. Poorbaugh to perform her administrative duties.

The difficulty with this case is that there is no evidence as to what in the office space was a trigger for the plaintiff's asthma. Not knowing the cause after the cleaning and testing efforts the County made, there is no reasonable accommodation that could be expected of the County. Short of relocating the entire Public Health Department or permanently modifying Plaintiff's job duties to allow her to work remotely, which it was not required to do under the ADA, the County was left in a difficult position: Ms. Poorbaugh's position required her to work in the Touber Building, and her condition prevented her from working there. The County did not abandon its efforts to accommodate the plaintiff. It scheduled a meeting with Ms. Poorbaugh following her FMLA leave to discuss other possible accommodations and seeking details of what triggers her asthmatic symptoms. Because of Ms. Poorbaugh's resignation that meeting was never held. Given these circumstances, a reasonable jury could not conclude that the County failed to attempt a reasonable accommodation, or that there were any reasonable accommodations requested before Ms.Poorbaugh resigned.

Because the plaintiff was not able to perform the essential functions of her position with Chaffee County, with or without reasonable accommodation, she has failed to establish

7

that she is a "qualified individual," as required to sustain a *prima facie* case of discrimination under the ADA.

To establish a *prima facie* case of ADA retaliation, the plaintiff must show: (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *Proctor v. United Parcel Service*, 502 F.3d 1200 (10th Cir. 2007) (internal citations omitted). It is undisputed that Ms. Poorbaugh resigned after her FMLA leave expired in March 2011. Thus, Plaintiff must establish that she was constructively discharged to sustain the second element of her *prima facie* case. *See Narotzky v. Natrona County Mem. Hosp.*, 610 F.3d 558, 565-66 (10th Cir. 2010).[1]

A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that, based on the totality of the circumstances, a reasonable person in the employee's position would feel forced to resign. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (citation omitted). This is a purely objective standard. *Id.* at 1136 n.7. Whether a constructive discharge occurred is a question of fact. *Strickland v. UPS*, 555 F.3d 1224, 1228-29 (10th Cir. 2009). Summary judgment is, by consequence, only appropriate "if the evidence is susceptible to but one interpretation." *Id.* at 1228 (citing *Riske v. King Soopers*, 366 F.3d 1085, 1088 (10th Cir. 2004)).

---

[1] In her briefing and at oral argument, Plaintiff suggests that being disciplined for absenteeism and being placed on a Performance Improvement Plan constituted adverse actions, even though such actions had no impact whatsoever on her position, pay, or benefits. Instead, Plaintiff flatly states that such actions would dissuade a reasonable employee from bringing a charge of discrimination. [*See* Doc. 31 at 22.] Plaintiff has not developed this argument in any meaningful way; to the extent it merits consideration, the Court concludes that any possible dissuasion is *de minimis* and therefore not actionable. The Performance Improvement Plan was modest in its prescriptions (e.g., "improve documentation of daily work time"), [*see* Doc. 24, Ex. R], and her discipline amounted to a written warning.

The record here is susceptible to only one interpretation. Defendant has offered evidence indicating that it tried to investigate and address whatever in the Public Health Office was causing Ms. Poorbaugh problems; and worked with her in good faith to reach a reasonable accommodation for her asthmatic symptoms. Taking the plaintiff's claims of Ellis' misconduct as true, that misconduct, while undoubtedly unpleasant and offensive to the plaintiff, does not rise to the level of objective intolerability such that a reasonable person in Ms. Poorbaugh's position would have felt forced to resign. She could have returned to work following her medical leave and continue to work with the County to find an accommodation for her circumstances—both in terms of her relationship with Ms. Ellis, and the location where Ms. Poorbaugh could work. The County showed itself to be a willing partner in that effort. Given those alternatives, a reasonable jury could not conclude that Plaintiff was constructively discharged. That finding is fatal to Plaintiff's ADA retaliation claim.

To establish a hostile work environment claim under the ADA, the plaintiff must show that: (1) she is a qualified individual with a disability under the ADA; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was so severe and pervasive (in both an objective and subjective sense) as to alter the terms and conditions of her employment; and (5) there is a basis for imputing responsibility for that harassment to Defendant. *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1090-91 (D. Colo. 2012) (citing *Fox v. General Motors Corp.*, 247 F.3d 169, 176–78 (4th Cir. 2001)). As discussed above, the plaintiff has failed to show that she is a qualified individual under the ADA. Assuming she could meet that requirement and that she was subject to unwelcome harassment, because of her disability, such harassment has not been

shown to have been so severe and pervasive as to alter the terms and conditions of her employment.

Severity and pervasiveness is a question of fact. *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) (citations and quotations omitted). This evaluation is made from both an objective and subjective perspective. *Id.* Neither party disputes that Ms. Poorbaugh subjectively believed her work environment was hostile. The question is whether, considering all the circumstances, Ms. Poorbaugh's allegations rise to the level of being objectively severe or pervasive.

To evaluate whether a working environment is sufficiently hostile or abusive, courts examine all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (citation omitted). As described above, Ms. Poorbaugh has presented testimony that Susan Ellis yelled at her on three occasions: one time, Ms. Ellis called Ms. Poorbaugh a liar; another, Ms. Ellis questioned whether Ms. Poorbaugh had worked the hours she claimed; and in the third, Ms. Ellis expressed doubt that there was anything wrong with the plaintiff. [*See* Doc. 24 at 25.] The record also indicates that Chaffee County management failed to immediately address Ms. Poorbaugh's complaints concerning Ms. Ellis' conduct.

Ms. Ellis' conduct was limited to three isolated outbursts in a two-month period; it was mildly severe; it was mildly embarrassing, but not physically threatening or humiliating; and there is no indication that the conduct unreasonably interfered with the plaintiff's job

performance. Ms. Poorbaugh has also not offered any evidence showing that her work atmosphere was generally hostile or abusive. The plaintiff has failed to show that the conduct of Ms. Ellis could be considered objectively severe or pervasive by a rational juror. Accordingly, the plaintiff's hostile work environment claim fails.

To make out a *prima facie* claim for interference with her FMLA rights, the plaintiff must establish that: (1) she was entitled to FMLA leave; (2) some adverse action by defendant interfered with her right to take FMLA leave; and (3) defendant's action was related to the exercise or attempted exercise of her FMLA rights. *See Jones v. Denver Public Schs.*, 427 F.3d 1315, 1318-19 (10th Cir. 2005); *see also Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004). An "adverse action" in the FMLA interference context is one that "prevents the employee from taking the full 12 weeks of leave guaranteed by the act, denies reinstatement to an employee returning from leave, or denies the employee the initial permission to take leave." *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1097 (D. Colo. 2012) (citing *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

None of those adverse actions is present here. Ms. Poorbaugh took the full twelve weeks of leave guaranteed by the FMLA. Chaffee County did not deny her reinstatement when her leave expired. Chaffee County did not deny her permission to take the leave. Because Plaintiff has failed to establish that she suffered an adverse action within the meaning of an FMLA interference claim, summary judgment is warranted.

To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must show that: (1) she engaged in activity protected under the FMLA; (2) she subsequently suffered adverse action by Defendant; and (3) a causal connection existed between her activity and

the adverse action. *Archuleta v. Colo. Dep't of Insts.*, 936 F.2d 483, 486 (10th Cir. 1991). As to the adverse action element, an FMLA retaliation claim may be sustained by showing that the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work. *Campbell*, 478 F.3d at 1287-88.

The record is devoid of a single adverse action taken by Chaffee County following the end of the plaintiff's FMLA leave. The adverse actions the plaintiff complains of in support her constructive discharge theory and her hostile work environment claim all pre-date her FMLA leave. Thus, Plaintiff cannot sustain her FMLA retaliation claim.

Upon the foregoing, it is,

ORDERED that Defendant's Motion for Summary Judgment is granted, and judgment will enter for the defendant, dismissing all of the plaintiff's claims.

Dated: October 28th, 2013.

                                                        BY THE COURT:

                                                        s/Richard P. Matsch
                                                        _____
                                                        Richard P. Matsch
                                                        Senior District Judge